UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| DEANNA FINNIGAN, ) | |
|     *Plaintiff* ) | |
| ) | Case No. 1:21-CV-04685 |
| V. ) | |
| ) | Judge Steven C. Seeger |
| SGT ROBERT CARRILLO # 2429, ) | |
| P.O. MICHAEL PETIS # 15422, ) | Magistrate Judge Jeffrey T. Gilbert |
| P.O JAIRO VALERIANO #10649, SGT. ) | |
| JOSEPH STANULA #1163, OFFICER ) | JURY DEMAND |
| SHELISHA JONES #16634, DETENTION ) | |
| AIDE MICHELLE PARKER, ) | |
| DETENTION AIDE CARMEN ) | |
| GONZALEZ, Individually, and THE CITY ) | |
| OF CHICAGO, A Municipal Corporation, ) | |
|     *Defendants*. | |

## SECOND AMENDED COMPLAINT AT LAW

NOW COMES the Plaintiff, DEANNA FINNIGAN ("FINNIGAN"), by and through her attorneys, The Law Office of C.N. Norris, LLC, and complaining against the Defendants, SGT ROBERT CARRILLO # 2429 ("CARRILLO"), P.O. MICHAEL PETIS # 15422 ("PETTIS"), P.O JAIRO VALERIANO #10649 ("VALERIANO"), SGT. JOSEPH STANULA #1163 ("STANULA"), OFFICER SHELISHA JONES #16634 ("JONES"), DETENTION AIDE MICHELLE PARKER ("PARKER"), DETENTION AIDE CARMEN GONZALEZ ("GONZALEZ"), Individually, and THE CITY OF CHICAGO, A Municipal Corporation, as follows:

## STATEMENT OF THE CASE

1. This action is brought pursuant to the laws of the United States Constitution,

specifically, 42 U.S.C. §1983 and §1988, and the laws of the State of Illinois, to redress deprivations of the Civil Rights of the Plaintiff, FINNIGAN, accomplished by acts and/or omissions of the Defendants, CARRILLO, PETIS, STANULA, JONES, GONZALEZ, and PARKER, committed under color of law.

2. Jurisdiction is based on Title 28 U.S.C. §1343 and §1331 and supplemental jurisdiction of the State of Illinois.

3. The United States District Court for the Northern District of Illinois is the proper federal venue for this action, pursuant to Title 28 of the United States Code, Section 1391(b), because it is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## THE PARTIES

4. The Plaintiff, DEANNA FINNIGAN, was at all relevant times a United States Citizen and resident of the State of Illinois.

5. At all relevant times the Defendants, CARRILLO, PETTIS, VALERIANO, STANULA, JONES, PARKER, AND GONZALEZ, were duly appointed Chicago Police Officers or employees of the Chicago Police Department acting within the scope of their employment and under color of law.

6. The CITY OF CHICAGO is a statutory municipal corporation and the employer of the Defendants.

## STATEMENT OF FACTS

**The Events of October 1, 2019**

7. On October 1, 2019, FINNIGAN was at the Juvenile Court House, located at 1100 S. Hamilton Ave., Chicago, IL, 60612, for a court hearing.

8. CARRILLO was also at the Juvenile Court House, located at 1100 S. Hamilton Ave., Chicago, IL, 606012 on October 1, 2019.

9. At all times on October 1, 2019, CARRILLO displayed his police badge on his belt buckle.

10. CARRILLO had an order of protection entered against FINNIGAN that was in effect on October 1, 2019.

11. After court, FINNIGAN headed to the TASC, located at 2320 Roosevelt Rd, Chicago, IL, 60608.

12. An Illinois Department of Family & Children Services worker, Rashida Muhammad ("MUHAMMAD"), requested a police escort to the TASC office. CARRILLO offered to escort MUHAMMAD.

13. On her way to the TASC office, FINNIGAN waited and entered an elevator alone. Once she entered the elevator, she repeatedly pressed the "close door" button. As the elevator doors were closing, CARRILLO stuck his hand in between the closing doors to stop the elevator from leaving. CARRILLO and MUHAMMAD entered the elevator.

14. During the elevator ride, CARRILLO made hostile remarks to FINNIGAN.

15. FINNIGAN pulled out her phone to record CARRILLO.

16. As FINNIGAN held up her phone, CARRILLO pushed her phone and hand to prevent her from recording and pushed FINNIGAN backwards.

17. Once FINNIGAN arrived at the TASC office, CARRILLO was waiting for her.

18. FINNIGAN called the police four times to inform law enforcement that CARRILLO was violating the order of protection.

19. After the fourth call, Chicago Police Officers arrived and spoke with FINNIGAN. They took notes and instructed her to go on with her day.

**Incidents on November 25, 2019**

20. On November 25, 2019, FINNIGAN went to the Juvenile Court House for a court hearing and CARRILLO was sitting in the lobby.

21. Upon seeing FINNIGAN, CARRILLO made a phone call.

22. At all times on November 25, 2019, CARRILLO displayed his police badge on his belt buckle.

23. FINNIGAN overheard CARRILLO state, not verbatim, "You remember that favor you owe me...well, she is here now."

24. Approximately fifteen minutes later, PETTIS, VALERIANO, and JONES arrived and spoke with CARRILLO.

25. Shortly thereafter, PETTIS, VALERIANO and JONES approached FINNIGAN and told her she was under arrest.

26. FINNIGAN asked PETTIS, VALERIANO and JONES to place her in handcuffs in a private area. However, CARRILLO quickly approached the parties and instructed PETTIS, VALERIANO and JONES that FINNIGAN was a "flight risk" and she had to be handcuffed immediately.

27. Upon arrival at police station, PETTIS and VALERIANO asked to speak with STANULA and instructed him to keep FINNIGAN detained as long as possible. STANULA acknowledged this request.

28. As FINNIGAN sat on a bench waited for her processing, she informed JONES at the booking desk that she was prone to seizures and needed her medication.

29. The officer did not follow-up or assist her.

30. Once FINNIGAN was taken to a jail cell for holding, she informed PARKER and GONZALEZ that she was prone to seizures and needed medication. Once again, FINNIGAN did not receive any medical attention or medication.

31. During her detention, FINNIGAN suffered a seizure hitting her head against the floor.

32. FINNIGAN informed GONZALEZ and PARKER that she was injured and needed medical assistance. The John Doe Officer did not provide FINNIGAN with any medical assistance.

33. FINNIGAN'S family attempted to post her bond, however STANULA, PARKER, GONZALEZ, and JONES unlawfully prolonged FINNIGAN'S detention by misinforming them of the location of her detention.

## COUNT I – EXCESSIVE FORCE

1-33. Each of the forgoing paragraphs are incorporated as if fully restated herein.

34. The force that Defendant, CARRILLO, used against FINNIGAN on October 1, 2019, was unreasonable and excessive. This is in violation of the Plaintiff's Fourth and Fourteenth Amendment rights to the United States Constitution as protected by 42 U.S.C. § 1983.

35. The actions of the Defendant, CARRILLO, were intentional, willful, and wanton.

36. As a result of Defendant, CARRILLO'S, excessive force, the Plaintiff was injured.

37. The aforementioned action was the direct and proximate cause of the Constitutional violations set forth above, and caused Plaintiff, FINNIGAN, to

suffer without limitation, physical injury, pain and suffering, humiliation, and emotional distress.

WHEREFORE Plaintiff, FINNIGAN, respectfully requests that this Court enter judgment in her favor and against Defendant, CARILLO, and award compensatory damages, punitive damages, costs, and attorney's fees against Defendant, as well as any other relief that this court deems just and equitable.

## COUNT II – BATTERY/ILLINOIS STATE LAW

1-37. Each of the forgoing paragraphs are incorporated as if fully restated herein.

38. The actions of the Defendant, CARRILLO, on October 1, 2019, constitute battery under Illinois State Law.

39. As a result of Defendant's, CARRILLO, action, the Plaintiff, FINNIGAN, experienced pain, suffering, physical injuries, and monetary loss.

WHEREFORE Plaintiff, FINNIGAN, respectfully requests that this Court enter judgment in her favor and against Defendant, CARRILLO, and award compensatory damages, punitive damages, costs, as well as any other relief that this Court deems just and equitable.

## COUNT III – 42 U.S.C. § 1983 FALSE ARREST

1-39. Each of the forgoing paragraphs are incorporated as if fully restated herein.

40. At the time the Defendants, CARRILLO, PETTIS, and VALERIANO approached and confronted FINNIGAN on November 25, 2019, she was not committing a crime or breaking any laws.

41. At no point in time on November 25, 2019, did FINNIGAN commit a crime.

42. The Defendants, CARRILLO, PETTIS, and VALERIANO, arrested, participated in, and/or caused the arrest of FINNIGAN, without probable cause.

43. The charges against FINNIGAN were false.

44. The actions of Defendants, CARRILLO, PETTIS, and VALERIANO violated the Plaintiff's Fourth and Fourteenth Amendment Rights of the United States Constitution and were in violation of the said rights protected by 42 U.S.C. § 1983.

45. As a direct and proximate cause of the Defendants, CARRILLO, PETTIS, and VALERIANO, Plaintiff, FINNIGAN, suffered violations of her constitutional rights, emotional anxiety, fear, humiliation, monetary loss, pain, and suffering.

WHEREFORE the Plaintiff, FINNIGAN, prays for judgement against Defendants, CARRILLO, PETTIS, and VALERIANO reasonable compensatory damages, punitive damages, plus attorney's fees and costs, as well as any other relief that this Court deems just and equitable.

**COUNT IV – 42 U.S.C. § 1983 UNLAWFUL PRETRIAL DETENTION**

1-45. Each of the foregoing paragraphs are incorporated as if fully stated herein.

46. Subsequent to Plaintiff's arrest, Defendants, CARRILLO, PETTIS, VALERIANO, and STANULA caused Plaintiff to be detained without probable cause from November 25, 2019, to November 26, 2019.

47. Defendants, CARRILLO, PETTIS, VALERIANO, and STANULA knew that the charges they recommended to the States Attorney's Office for approval were false.

48. Due to the false allegations of Defendants, CARRILLO, PETTIS, VALERIANO, and STANULA, the false criminal charges against the Plaintiff were approved.

49. Defendants, CARRILLO, PETTIS, VALERIANO, and STANULA intentionally prolonged FINNEGAN'S unlawful detention.

50. Detention without probable cause violates the Fourth Amendment as applied to the states via the Fourteenth Amendment. *Manuel v. Joliet*, 137 S. Ct. 911 (2017).

51. As outlined above, Defendants, CARRILLO, PETTIS, VALERIANO, and STANULA caused Plaintiff to be detained without probable cause in violation of Plaintiff's Fourth Amendment and Fourteenth Amendment rights.

52. The misconduct of Defendants, CARRILLO, PETTIS, VALERIANO, and STANULA, as outlined above, proximately caused injury to FINNIGAN.

53. These injuries include, but are not limited to, loss of liberty, emotional pain and suffering, and lost wages.

WHEREFORE the Plaintiff, FINNIGAN, prays for judgment against Defendants, CARRILLO, PETTIS, VALERIANO, and STANULA for reasonable compensatory damages, punitive damages, plus attorney's fees and costs.

### COUNT V – 42 U.S.C. § 1983 FAILURE TO PROVIDE MEDICAL CARE

1-53. Each of the forgoing paragraphs are incorporated as if fully restated herein.

54. Plaintiff, FINNIGAN, was placed under arrest on November 25, 2019, despite officers knowing that the charges against her were unfounded.

55. Plaintiff, FINNIGAN, had informed Defendants, JONES, PARKER, and GONZALEZ while booking her during her unlawful arrest that she had a serious medical condition that made her prone to seizures and required her to have medication.

56. JONES, PARKER, and GONZALEZ had physical possession of FINNIGAN's medication and ignored her requests for the medication.

57. As a result of JONES, PARKER, and GONZALEZ'S failure to take action by providing medical care to Plaintiff, she suffered from a seizure in her detention and injured her head.

58. Upon FINNIGAN informing JONES, PARKER, and GONZALEZ that she injured her head and required medical attention, FINNIGAN was promptly ignored by all officers.

59. Defendants, JONES, PARKER, and GONZALEZ proximately and directly caused injury to FINNIGAN after she fell onto the floor during her seizure. These injuries include but are not limited to: loss of consciousness, physical pain, emotional pain and suffering and medical costs.

60. Defendants, JONES, PARKER, and GONZALEZ always wore their badges and official uniforms during this incident; and hence had a duty as law enforcement officers to provide medical care. The officers had no penological or security interests preventing them from providing such adequate medical care.

61. Defendants', JONES, PARKER, and GONZALEZ'S lack of action was unreasonable given the serious nature of Plaintiff's, FINNIGAN, health condition, the ease of providing medicine already in Defendants' possession, lack of police interests keeping the officers from providing medical care, and the ease of addressing her head injury.

WHEREFORE the Plaintiff, FINNIGAN, prays for judgment against the Defendants, JONES, PARKER, and GONZALEZ for reasonable compensatory damages, punitive damages, plus attorney's fees and costs.

## **COUNT VI – MALICIOUS PROSECUTION**

1-61. Each of the forgoing paragraphs are incorporated as if fully restated herein.

62. The Defendant, CARRILLO, and the CITY OF CHICAGO, through its employees and agents, proceeded with the charges knowing they were false.

63. CARRILLO, and the CITY OF CHICAGO, through its employees and agents, proceeded with the charges knowing that there was not probable cause to detain plaintiff, FINNIGAN.

64. Criminal charges against Plaintiff, FINNIGAN, were dismissed in a manner indicative of her innocence on April 1, 2022.

65. Plaintiff, FINNIGAN, retained an attorney and had to litigate the matter.

66. CARRILLO and the CITY OF CHICAGO, through its employees and agents, showed willful malice through their statements and actions.

67. As a result of the Defendant, CARRILLO and the CITY OF CHICAGO, through its employees and agents, the Plaintiff suffered fear, emotional distress, anxiety, and monetary expenses.

**WHEREFORE**, the Plaintiff, FINNIGAN, prays for judgment in her favor and against the Defendant, CARRILLO, and the CITY OF CHICAGO, through its employees and agents, for reasonable compensatory and punitive damages, plus costs.

## COUNT VII – RESPONDEAT SUPERIOR

1-68. Each of the forgoing paragraphs are incorporated as if fully restated herein.

68. In committing the acts alleged in this Complaint, the individually named Defendant officer, CARRILLO, was a member and agent of, the CITY OF CHICAGO, acting at all relevant times within the scope of their employment.

69. Defendant, CITY OF CHICAGO, is liable as principal for all torts in violation of state law committed by its agents.

70. The Plaintiff, FINNIGAN, suffered damages for her mental, emotional injury and pain, mental anguish, humiliation, and embarrassment that were inflicted by Defendant

CARILLO from the Chicago Police Department acting under employment of the City of Chicago.

WHEREFORE, the Plaintiff, FINNIGAN, prays for judgment in her favor and against the Defendant, CITY OF CHICAGO, for the compensatory damages of its employee, CARRILLO, plus costs.

## COUNT VIII – INDEMNIFICATION

1-70. The Plaintiff realleges and incorporates the allegations contained in counts I, II, III, IV, V, and V as her respective allegations of paragraphs 1-70 of Count VIII as though fully set herein.

71. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

72. The Defendants, CARRILLO, PETTIS, VALERIANO, STANULA, JONES, PARKER, CARMEN, and GONZALEZ, were employees of THE CITY OF CHICAGO, acting within the scope of their employment in committing the misconduct described herein.

WHEREFORE, should the Defendants, CARRILLO, PETTIS, VALERIANO, STANULA, JONES, PARKER, CARMEN, and GONZALEZ, be found liable for any of the acts alleged above, Defendant THE CITY OF CHICAGO would be liable to pay the Plaintiff, FINNIGAN, any judgment obtained against said officers.

## JURY DEMAND

The Plaintiff, FINNIGAN, hereby requests a trial by jury.

Respectfully submitted,

/s/ Brian Orozco
One of Plaintiff's Attorneys
The Law Office of CN Norris, LLC
900 West Jackson Blvd., Suite 7E
Chicago, Illinois, 60607